[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION 
The defendant, Planning Zoning Commission of the town of Westport (commission), unanimously granted an application of the town for a special permit and site plan approval for a multi-purpose athletic field and ball field on land owned by the town in a residence AAA zone. In granting the application, the commission expressly found that "(1) The plan is in conformance with the 1987 Town Plan of Development which specifically states that the Staples High School property should be used for both educational and recreational needs; and (2) The plan does not prevent or inhibit the orderly growth and development of the area; because the site of the proposed ballfields is already part of the high school premises; and (3) The plan does not have a significant adverse effect on adjacent areas located within the close proximity to the use; because adequate buffering that meets or exceeds the standards will be provided; and (4) The plan will not interfere with pedestrian circulation; users will be able to walk from the high school parking areas directly to the fields; and (5) The plan will not have a significant adverse effect on safety in the streets nor unreasonably increase traffic congestion in the area, nor interfere with the pattern of the Traffic Engineers submitted as part of the public record . . .; and (6) The plan will not have a significant adverse effect on storm drainage, sewage disposal or other municipal facilities; and (7) The use is in scale with and compatible with surrounding uses buildings streets and open spaces because the site is already a high school."
The commission made its granting of the special permit and site plan approval subject to numerous conditions, several of which were obviously fashioned to minimize any interference with area residents' quiet enjoyment of their property. Section 43-7.6 of the commission's regulations provides: "When the Commission grants a Special Permit or approves a Site Plan with conditions, each and all of said conditions shall be an integral part of the commission's decision. Should any of the conditions on appeal from such decision be found to be void or of no effect, then the conditional approval is likewise void. The applicant may refile another application for review." Correspondingly, in granting the application for a special permit and for site plan approval, the commission stated in condition ten: "This is a conditional approval. Each and every condition is an integral part of the Commission decision. Should any of the conditions, on appeal from this decision, be found to CT Page 6289 be void or of no legal effect, then this conditional approval is likewise void."[1]
This was the second time in three years in which the commission had granted the town's application for a special permit and site plan approval. The first approval was set aside on appeal because the commission's chairman had illegally added conditions to the approval which the commission, as a corporate body, had not approved. See Flochv. Planning Zoning Commission, 38 Conn. App. 171, ___ A.2d ___ (1995).
The plaintiff has again appealed the action of the commission. The plaintiff owns land which abuts the property as to which the commission granted the special permit and site plan approval. General Statutes § 8-8(b) provides that any person "aggrieved" by a zoning commission's decision may appeal that decision to the superior court. General Statutes § 8-8 (a) defines an aggrieved person to include the owner of the land that abuts or is within a radius of 100 feet of any portion of the land involved in the decision of the agency.[2] Since the plaintiff owns land which abuts the land involved in the decision of the zoning commission, she has statutory aggrievement and has standing to maintain this appeal.McNally v. Zoning Commission, 225 Conn. 1, 5-8, 621 A.2d 279 (1993);Caltabiano v. Planning Zoning Commission, 211 Conn. 662, 665-670,560 A.2d 975 (1989).
In her appeal, the plaintiff raises four issues: (1) The commission again purported to impose additional conditions on its approval, after it already had acted as a corporate body, (2) The commission failed to comply with General Statutes § 8-24[3], (3) There is no authority for the commission's conditioning a special permit or site plan approval on the applicant's creation of a "buffer", and (4) There is no authority for the commission to impose as a condition of special permit and site plan approval a limitation on hours of operation. At oral argument, the plaintiff expressly abandoned the first two claims, for which the court could find no support in the record. Therefore, the court will limit, and strictly limit, its review to the claims that two of the conditions imposed by the commission are not authorized by the regulations.
"Before turning to the merits of the plaintiffs' claims, it is well to observe the standard of review which the court must observe in examining the action of the commission in granting a special permit and site plan approval. Under the Westport Zoning Regulations, site plan documents must be submitted as part of a special permit application. Zoning Regulations §§ 44-1 to 44-4. Accordingly, the two are inseparable. See [Barbarino Realty Development Corp. v. Planning CT Page 6290Zoning Commission, 222 Conn. 607, 613-614, 610 A.2d 1205 (1992);] SSMAssociates Limited Partnership v. Plan Zoning Commission,15 Conn. App. 561, 567, 545 A.2d 602 (1988), affirmed,211 Conn. 331, 559 A.2d 196 (1989). Indeed, under the regulations, `[i]n reviewing a special permit application, the Commission shall consider all the standards contained in Sec. 44-5, Site Plan Standards and Objectives,' as well as the standards and objectives specifically prescribed for special permits. Zoning Regs. § 44-6. `When considering an application for a special [permit], a zoning authority acts in an administrative capacity, and its function is to determine whether the proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and statutes are satisfied. A.P.W. Holding Corporation v. Planning ZoningBoard, 167 Conn. 182, 185, 355 A.2d 91 (1974). It has no discretion to deny the special [permit] if the regulations and statutes are satisfied [satisfied]. Westport v. Norwalk, 167 Conn. 151,155, 355 A.2d 25 (1974).' Daughters of St. Paul, Inc. v. Zoning Boardof Appeals, 17 Conn. App. 53, 56, 549 A.2d 1076 (1988). In reviewing the action of a board on a special permit, `[c]ourts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or valid reasons. (Citations omitted.) Whittaker v. Zoning Board of Appeals, 179 Conn. 650, 654,427 A.2d 1346 (1980). Since the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency; Feinson v. Conservation Commission, 180 Conn. 421,425, 429 A.2d 910 (1980); the court must determine the correctness of the conclusions from the record on which they are based. HousatonicTerminal Corporation v. Planning Zoning Board, 168 Conn. 304, 306,362 A.2d 1375 (1975). The record includes knowledge acquired by board members through personal observation. Burnham v. Planning ZoningCommission, 189 Conn. 261, 267, 455 A.2d 339 (1983).' (Internal quotation marks omitted.) Torsiello v. Zoning Board of Appeals,3 Conn. App. 47, 49-50, 484 A.2d 483 (1984). `The decision of the zoning authority will only be disturbed if it is shown that it was arbitrary, illegal or an abuse of discretion.' Id., 50." Marion Road Associationv. Planning Zoning Commission of the Town of Westport, Superior Court, judicial district of Fairfield, No. 030436S [1994 Ct. Sup. 10780] (1994); see Mimms v. Planning Zoning Commission of the Town ofWestport, Superior Court, judicial district of Fairfield, No. 0289405 [1993 Ct. Sup. 5731, 5739] (1993).
I
CT Page 6291
The plaintiff claims that "the imposition of an invalid condition pertaining to the creation of a buffer between the proposed fields and adjacent residential uses invalidates the [commission's] approval of the application."
One of the several conditions imposed by the commission provided: "The applicant shall determine, in conjunction with the Planning staff, appropriate landscape material to satisfy the requirement for Buffer landscaping between the fields and adjacent residential uses. This determination shall be based on a non-site inspection to be conducted with a Planning and Zoning staff representative and the Planning and Zoning Landscape Committee. A final landscape plan shall then be prepared and submitted to the Planning and Zoning Landscape Committee for approval."[4]
Since zoning is wholly statutory; Eden v. Town Plan ZoningCommission, 139 Conn. 59, 63, 89 A.2d 746 (1952); it is appropriate to turn first to the zoning enabling statute. General Statutes § 8-2
provides in relevant part that zoning regulations "may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception from a . . . planning and zoning commission . . . subject to standards set forth in the regulations and to conditions necessary to protect thepublic health, safety, convenience and property values. Such regulations shall be made in accordance with a comprehensive plan and in adopting such regulations the commission shall consider the plan of development prepared under section 8-23." (Emphasis added.)
"It is well settled that the conditions permitting the use of property as a special exception must be found in the zoning regulations themselves; that the commission must have the authority in granting a special exception to subject the grant only to those conditions which are found in the regulations; and that none of the conditions imposed by the commission alter the requirements prescribed in the zoning regulations. Farina v. Zoning Board of Appeals, 157 Conn. 420, 422,254 A.2d 492 (1969)." Beckish v. Planning Zoning Commission, 162 Conn. 11,14-15, 291 A.2d 208 (1971) (holding that a commission may not impose a condition that bears no relation to the use sought in the application).
In Farina v. Zoning Board of Appeals, supra, 157 Conn. 420, cited in Beckish, the commission granted a special exception for the building of an elderly housing and community recreation center subject to the condition that the dead-end road on which the property was situated be CT Page 6292 widened at the direction of the town traffic commission. A section of the zoning regulations required the board to find "that the existing public streets are suitable and adequate to handle any additional traffic generated by the proposal." The supreme court found error in the trial court's dismissal of the appeal. Said the court: "The board . . . does not have the power to change one of the requirements of the zoning regulations by imposing a condition which is clearly contrary to a requirement of the regulations. The traffic commission can assist the board . . in its effort to determine how much additional traffic is expected to result from the housing project and what road improvements would be necessary to provide for the increased traffic. The board . . cannot, however, delegate the duty of making this determination to the town traffic commission." Id., 424-424.
In Parish of St. Andrew's Church v. Zoning Board of Appeals,155 Conn. 850, 354, 232 A.2d 916 (1967), the court held that, under General Statutes § 8-2, as it then existed, and the local zoning regulations, the board could not condition the granting of a special exception on the property owner's dedication of an eleven foot strip of land.
In Hochberg v. Zoning Commission, 24 Conn. App. 526, 589 A.2d 889
(1991), the court affirmed a ruling that a zoning commission, under the regulations applicable in that case, could not condition a special permit for the construction of residential condominiums on there being a fixed maximum price for fifteen per cent of the units, deed restrictions specifying these terms, and monitoring of the units and sales by the zoning enforcement officer for ten years. Noting that General Statutes § 8-2 permitted zoning commissions to enact "regulations . . .[that] encourage the development of housing opportunities for all citizens . . ." the court simply noted that the town had not enacted such regulations. Id., 530.
From these and other cases, it appears that the current state of the law is that the commission must have the authority in granting a special exception to subject the grant only to those conditions which are found in the regulations; that none of the conditions imposed by the commission alter the requirements prescribed in the zoning regulations; that they be rationally related to the relief sought in the application and to the legitimate purposes of zoning, recognizing that only a limited portion of the police power has been delegated by the General Assembly to local zoning boards. The more remote the relation of the condition to the site, to the proposed improvement or to the zoning power, the less likely it is to be sustained.
This case, however, is analogous to Pleasant Valley NeighborhoodCT Page 6293Assn. v. Planning Zoning Commission, 15 Conn. App. 110, 543 A.2d 296
(1988), because, as in that case, the regulations do authorize the buffer. Section 44-6 of the Westport zoning regulations provides: "In reviewing a Special Permit application, the Commission shall consider all the standards contained in Sec. 44-5, Site Plan Standards and Objectives, herein, and shall take into consideration the public health, safety and general welfare and may prescribe reasonable conditions andappropriate safeguards to assure the accomplishment of such standardsand objectives. In granting any Special Permit, the Commission shall determine that the proposed use conforms to the overall intent of these regulations and shall consider in each case whether the proposed use will: . . . (3) Not have a significant adverse affect on adjacent areas located within the close proximity to the use. . . . (10) Be in scale with and compatible with surrounding uses, buildings, streets and open spaces." (Emphasis added.) Section 44-5 of the regulations, entitled "Site Plan Standards and Objectives," provides: "In reviewing the Site Plan, the Commission shall take into consideration the public health, safety and general welfare and as a condition of approval may require such modifications of the proposed plans as it deems necessary to comply with the specific areas, bulk, parking, landscaping, sign and document standards contained herein as well as to assure the accomplishments of the following objectives: . . . 44-5.4 Landscaping and Screening That the proposed development will protect the environmental quality of the site and will enhance the adjacent property values. At least the following aspects of the site plan shall be evaluated to determine conformity to this objective. (a) Existing large and/or specimen trees shall be preserved to the maximum extent possible particularly within the front landscape and buffer strip areas. . . ." (Emphasis added.)
The plaintiff focuses on the commission's use of the word "buffer" in the condition in question, undoubtedly because of the bugaboo brought about by that word in Veseskis v. Bristol Planning Commission,168 Conn. 358, 360, 362 A.2d 538 (1975), and Bartsch v.Planning Zoning Commission, 6 Conn. App. 686, 506 A.2d 1093
(1986). The condition, however, pertains to landscaping. As such, it is authorized by the regulations, does not otherwise alter requirements of the regulations, is rationally related to the use sought in the application and is clearly within the ambit of that portion of the police power delegated to the commission. AS Professor Tondro has observed, "the vegetation [landscaping] buffer is a condition frequently imposed on special permits, and would readily . . . [be] upheld in that context." T. Tondro, Connecticut Land use Regulation (2nd Ed.), p. 177; see alsoAlemany v. Commissioner of Transportation, 215 Conn. 437, 439, 442,576 A.2d 503 (1990); Borzencki v. Estate of Stakum, 195 Conn. 368, 378,489 A.2d 341 (1985); P.X. Restaurant, Inc. v. Windsor, 189 Conn. 153, 156, CT Page 6294454 A.2d 1258 (1983); Chevron Oil Co. v. Zoning Board of Appeals,170 Conn. 146, 149, 365 A.2d 387 (1976); Rocchi v. Zoning Board of Appeals,157 Conn. 106, 108, 248 A.2d 922 (1968); State National Bank v. Planning Zoning Commission, 156 Conn. 99, 101, 239 A.2d 528 (1968); Donohue v.Zoning Board of Appeals, 155 Conn. 550, 557, 235 A.2d 643 (1967); Larsenv. Zoning Commission, 153 Conn. 483, 489, 217 A.2d 715 (1966); Krejpciov. Zoning Board of Appeals, 152 Conn. 657, 659, 211 A.2d 687 (1965); St.John's Roman Catholic Church Corp. v. Darien, 149 Conn. 712, 719-720,184 A.2d 42 (1962); Pecora v. Zoning Commission, 145 Conn. 435, 445,144 A.2d 48 (1958); Clark v. Town Council, 145 Conn. 476, 489, 144 A.2d 327
(1958); Levinsky v. Zoning Commission, 144 Conn. 117, 119, 127 A.2d 822
(1956); Miller v. Town Planning Zoning Commission, 142 Conn. 265, 267,113 A.2d 504 (1955); Mallory v. West Hartford, 138 Conn. 497, 503,86 A.2d 668 (1952); Allied Plywood v. Planning Zoning Commission,2 Conn. App. 506, 510-511, 480 A.2d 584 (1984).
 II
The other condition of approval challenged by the plaintiff limits the hours of operation of the athletic field. That condition provides: "The scheduled hours of use shall be restricted to no earlier than noon on Sunday, 8:00 a.m. on Saturday and 8:00 a.m. on Monday through Friday. All scheduled play must stop by sundown throughout the year."
In Bora v. Zoning Board of Appeals, 161 Conn. 297, 288 A.2d 89
(1971), the supreme court held that a zoning board could not condition the granting of a variance for the operation of a cafe where liquor would be served on the cafe's limiting its hours of operation. The holding in that case, however, was based on the legislature's having delegated in General Statutes (Rev. 1969) § 30-91 the authority to limit the hours of operation of liquor outlets to the town. In Shulman v.Zoning Planning Board, 154 Conn. 426, 428, 226 A.2d 380 (1967), it was assumed, although not held, that a zoning board could condition a special exception on a limitation of the hours of operation, although the court held that under the zoning regulations applicable in that case, the board was not required to do so.
Other jurisdictions are divided on the issue of whether and when a zoning authority may impose a limitation of hours of operation as a condition of a zoning approval. See Annotation, "Imposing Restriction as to Hours or Days of Operation of Business as Condition of Allowance of Special Zoning exception or Variance," 99 A.L.R.2d 227, as supplemented. One treatise has flatly stated that "[a]bsent specific authority in the ordinance, a board may not impose conditions which relate to the detailed conduct of the applicant's business rather than CT Page 6295 to zoning limitations on use of the land." 83 Am.Jur.2d, Zoning 
Planning, 1010; see Bernstein v. Board of Appeals, 60 Misc.2d 470,302 N.Y.S.2d 141 (1969); Schlosser v. Michaels, 18 App. Div. 2d 940,238 N.Y.S.2d 433 (1963).
While some cases explain such a prohibition on the basis that the police power delegated to zoning authorities does not encompass the power to prescribe hours of operation, the true basis appears to be the natural aversion to judicial entanglement in the business decisions of private enterprise. Here, however, that rationale is absent. Where the rationale for a rule ceases, the rule does not apply. "Legal principles ought not to be applied in a mechanistic manner." Droeger v. WelchSporting Goods Corporation, 541 F.2d 790, 792 (9th Cir. 1976), quoted in Cummings v. Tripp, 204 Conn. 67, 81, 527 A.2d 1230 (1987). The applicant is a governmental subdivision and the use sought is governmental, not proprietary. The court holds that the imposition of a limitation as to hours of operation was not beyond the police power delegated to the commission in General Statutes § 8-2.
This, however, does not answer whether the commission was authorized under its own regulations to impose the condition. As discussed supra, the case law, though not the statute, requires that the commission must have the authority in granting a special exception to subject the grant only to those conditions which are found in the regulations. Beckish v. Planning Zoning Commission, supra,162 Conn. 14-15. However, in Whisper Wind DevelopmentCorp. v. Planning ZoningCommission, 32 Conn. App. 515, 522, 630 A.2d 108 (1993), affirmed,229 Conn. 176, 640 A.2d 100 (1994) (per curiam), our appellate courts held that zoning regulations may authorize the denial of a special permit based on general health, safety and welfare requirements. It would be anomalous to hold that a commission may deny an application on such general grounds, but may not impose a condition on a special permit based on such grounds, where the condition is supported by the record. This is especially so since General Statutes § 8-2 requires that the standards for granting a special permit must be set out in the regulations, but does not require that a laundry list of potential conditions be enumerated. Moreover, rational land use planning militates that greater flexibility be afforded the commission in fashioning conditions of approval. There is no good reason for requiring that a catalog of possible conditions must be set forth in the regulations with respect to special permits, but not with respect to other land use permits. See generally, Tondro, op. cit., 463-47. What is important, both for the applicant and for the community, is that the conditions imposed be reasonable and supported by the record. CT Page 6296
In Farmington v. Viacom Broadcasting, Inc., 10 Conn. App. 190,522 A.2d 318, cert. denied, 203 Conn. 808, 525 A.2d 523 (1987), the defendant's predecessor was granted a special exception by the planning, zoning wetland commission to erect a television broadcast tower on the condition that an existing tower be razed. When there was no compliance with this condition or assurances that there would be compliance, "the plaintiffs brought suit seeking an injunction to prohibit the defendant from selling or leasing the [existing] standby tower, and an injunction requiring that the defendant immediately dismantle the standby tower." Id., 193. The trial court granted injunctive relief and the defendant appealed.
The defendant claimed "that the [trial] court erred in concluding that the commission had the authority to impose the condition that the standby tower be removed upon construction of the taller tower. The defendant cite[d] Beckish v. Planning Zoning Commission, 162 Conn. 11,14-15, 291 A.2d 208 (1971), in support of its claim. In Beckish, the plaintiff was granted a special exception on the condition, inter alia, that it take certain advertising signs down. The court found that there was nothing in the zoning regulations authorizing the defendant commission to require the discontinuance of the preexisting, nonconforming use before it would grant the exception. The defendant claim[d] that, as in Beckish, the commission did not have the authority to require the discontinuance of the preexisting use as a condition of granting the special exception." Farmington v. Viacom Broadcasting,Inc., supra, 10 Conn. App. 193.
Said the Appellate Court: "We do not find Beckish controlling in this instance. The commission had authority, both from the General Statutes and from its own regulations, to impose the condition that is in issue here. First, General Statutes 8-2 states that local zoning regulations `may provide that certain classes or kinds of structures . . . are permitted only after obtaining a special permit or special exception . . . subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values.' (Emphasis added by the Appellate Court.)
"Second, article II, § 1(3) of the Farmington zoning regulations allows construction of broadcast towers only when permitted by the commission after a public hearing. The regulations condition the commission's granting of any special exception upon the requirement that the proposed use not increase fire or traffic hazards, depreciate neighborhood property values, or cause other detriment to the neighborhood or its residents. The regulations do not restrict the CT Page 6297 commission's power to grant or deny special exceptions to narrow or specific grounds alone. Rather, the regulations give the commission authority to make decisions within broad, general limits related to a proposed structure's potential impact on the community.
"The plaintiffs assert that implicit in the power to authorize special exceptions which do not have an adverse impact on public safety or neighborhood characteristics, is the authority to condition the grant of a special exception to avoid such an impact." Farmington v. ViacomBroadcasting, Inc., supra, 10 Conn. App. 193-194. The Appellate Court agreed, stating: "The defendant's maintenance of the existing standby tower plainly bears a substantial relationship to its request for a new tower. From the outset, the goal of the plaintiffs was `that Rattlesnake Mountain not be dotted with numerous towers' that would affect property values and the character of the surrounding neighborhoods. It is therefore within the scope of the zoning regulations for the commission to impose conditions related to aesthetics and property values on the granting of the special exception." Farmington v. Viacom Broadcasting,Inc., supra, 10 Conn. App. 196.
Here, §§ 44-5, 44.5.4, 44-6(3), (10) of the zoning regulations, quoted supra in part I, confer adequate authority on the commission to impose a condition as to hours of operation on the granting of a special permit and site plan approval to the town for an athletic field.[5] The condition bears an obvious relationship to the use requested in the application for special permit and site plan approval.
It has not gone unnoticed that in her appeal, as presented to the court in oral argument, the plaintiff has not challenged the reasonableness of the commission's action approving a special permit and site plan for this athletic field, but has sought to derail that approval by challenging conditions which were clearly imposed for her benefit and for the benefit of other nearby property owners. Indeed, at oral argument, the plaintiff admitted that she was not harmed in the least by the imposition of these conditions. It is undoubtedly the prerogative of an attorney to avail herself on behalf of her client of every anomaly the law has to offer. Elsewhere in the law, however, it is well settled that a party must have standing as to the particular issue he seeks to raise. Morgan v. Brown, 219 Conn. 204, 592 A.2d 125
(1991); State v. Pierson, 208 Conn. 683, 546 A.2d 268 (1988), cert. denied, 489 U.S. 1016, 109 S.Ct. 1131, 103 L.Ed.2d 193 (1989); Husti v.Zuckerman Property Enterprise, Ltd., 199 Conn. 575, 586-590,508 A.2d 735, appeal dismissed, 479 U.S. 802, 107 S.Ct. 43, 93 L.Ed.2d 373
(1986); Delio v. Earth Garden Florist, Inc., 28 Conn. App. 73, 77-78,609 A.2d 1057 (1992); New Haven v. Freedom of Information Commission,
CT Page 62984 Conn. App. 216, 221, 493 A.2d 283 (1985). The doctrine does not appear to be ingrained as yet in Connecticut land use law, at least where the issue raised is not of constitutional magnitude. To employ it here would divest the court of jurisdiction to dispose of the appeal on the merits;F.P., Inc. v. Collegium Wethersfield Ltd. Partnership, 33 Conn. App. 826,830, 639 A.2d 527, cert. denied., 229 Conn. 917, 642 A.2d 1211
(1994), and cases cited therein thereby potentially compounding the delay and consequential injustice already done.
On the merits, therefore, the appeal is dismissed.